IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:23-CV-277-RJ

DAWN H. BRIGHT,

    Plaintiff/Claimant,

v.

MARTIN O'MALLEY,
*Commissioner of Social Security*,

    Defendant.

ORDER

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-12, -13]. Claimant Dawn H. Bright ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. Claimant filed a response to the Commissioner's brief, [DE-14], and the matter is ripe for adjudication. Having carefully reviewed the administrative record and the briefs submitted by the parties, the decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant filed applications for a period of disability, DIB, and SSI on November 19, 2019, alleging disability beginning November 2, 2019.[1] (R. 15, 307–27). The claims were denied initially and upon reconsideration. (R. 15, 81–152). A telephonic hearing before the Administrative Law Judge ("ALJ") was held on August 5, 2022, at which Claimant, represented

---

[1] Claimant's prior application for disability benefits was denied on November 1, 2019. (R. 60–80).

by counsel, and a vocational expert ("VE") appeared and testified. (R. 15, 34–59). On August 18, 2022, the ALJ issued a decision denying Claimant's request for benefits. (R. 12–33). On March 21, 2023, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d

2

438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not

3

disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since November 2, 2019, the alleged onset date. (R. 18). Next, the ALJ determined Claimant had the severe impairments of coronary artery disease post bypass, hypertension, post aneurysm, morbid obesity, depression, and generalized anxiety disorder. *Id.* The ALJ also determined that Claimant had no medically determinable shoulder impairment and that her back impairment was non-severe. *Id.* At step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18–20).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[2] with the following limitations:

> never climb ladders, ropes or scaffolds; occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl; and have no exposure to workplace hazards. Mentally, she can understand, remember and carry out simple tasks and adapt to gradual change within the scope of simple tasks.

(R. 20–23). In making this assessment, the ALJ found Claimant's statements about her limitations not entirely consistent with the medical and other evidence of record. (R. 20).

At step four, the ALJ concluded Claimant was unable to perform her past relevant work as a sandwich maker, waitress, or receptionist. (R. 23–24). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant was capable of performing other jobs that exist in significant numbers in the national economy.

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

(R. 24–25).

## V. DISCUSSION

Claimant contends the ALJ erred by failing to account in the RFC for the need to elevate her legs due to lower extremity edema from chronic venous insufficiency with varicose veins. Pl.'s Br. [DE-12] at 7–13; Pl.'s Resp. [DE-14] at 1–2. The Commissioner contends substantial evidence supports the ALJ's RFC assessment and the decision allows for meaningful review. Def.'s Br. [DE-13] at 7–20.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* SSR 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting SSR 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The applicable regulations provide that the ALJ "will not defer

5

or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must consider the persuasiveness of medical opinions using five factors: (1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) "other factors that tend to support or contradict a medical opinion." *Id.* §§ 404.1520c(c)(1)–(5), 416.920(c)(1)–(5). The most important factors are supportability and consistency. *Id.* §§ 404.1520c(a), 416.920c(a).

Claimant testified that she could not perform her past work as a receptionist because it required an "extreme amount" of sitting and that if she sits for more than an hour her legs and feet swell. (R. 41–42). She could not perform her past work that required standing all day because her legs would swell after 10–15 minutes and she would need to elevate them for 15–30 minutes. (R. 42, 44–45). The lower extremity swelling was initially attributed to her heart condition, but she was also being evaluated for a problem with her leg veins. *Id.* Claimant used to travel with her boyfriend on his truck routes but would mostly stay in the bed with her feet propped up, and she

6

had not traveled with him for almost a year at the time of the administrative hearing. (R. 43). Her doctor recommended compression stockings to help with the swelling but she could not tolerate them and felt they did not help much. (R. 45). Claimant's doctors also recommended that she elevate her legs when she starts feeling swelling and pain in her feet, and she keeps her legs elevated to at least waist level for 12–13 hours a day. (R. 45–46). The VE testified that a need to elevate the legs at or above waist level would preclude all work. (R. 54).

The ALJ discussed at length Claimant's allegations of swelling in her legs and feet but concluded that she could still perform a reduced range of light work and did not include a limitation for leg elevation in the RFC. (R. 21, 23, 25). First, the ALJ discussed references to swelling in the treatment notes:

> The claimant did not report anything like leg swelling until February 2021 when she reported feeling swollen. Her cardiologist noted she had large bilateral lower extremities and ankles due to body habitus with trivial bilateral ankle edema. (Exhibits B11F, B15F & B19F). No provider noted edema until June 2022, when the claimant was evaluated for venous insufficiency and was noted to have moderate edema in the bilateral lower extremities. (Exhibit B22F). Additional testing was ordered to determine the cause of her edema. Her treatment provider directed the claimant to wear thigh high compression stockings (especially when on her feet), to exercise, weight loss and get off her feet when possible. It is notable that the claimant is obese and has had a steadily increasing BMI during the period in question. (Exhibits B5F, B9F, B11F, 13F, B15F & B22F).

(R. 21). Claimant takes issue with the ALJ's finding that no provider noted edema until June 2022, and cites a June 30, 2018 consultative evaluation noting bilateral lower extremity non-pitting edema, (R. 464). However, the consultative examination is from more than a year prior to the period at issue and within a period considered in a prior decision, which found that "while the medical evidence does demonstrate some swelling in her lower extremities, the claimant's testimony that she has swelling all over her body every day is inconsistent with the medical

7

evidence." (R. 69, 71). The ALJ considered the prior decision as required by *Albright* and found "no new and material evidence of any new medically determinable impairment or worsening of symptoms since the prior ALJ denial." (R. 25). Furthermore, the consultative examiner concluded that Claimant's ability to stand, walk, or sit for long periods of time was not limited by her edema or other impairments and no limitation for leg elevation was suggested, (R. 465), so the June 2018 evaluation does not undermine the ALJ's decision.

Next, the ALJ discussed a March 1, 2022 statement from Dr. Trifiro, Claimant's cardiologist, that recommends she "be allowed to elevate her feet as much as possible throughout the day to decrease lower extremity swelling," (R. 893). (R. 23). The ALJ found the opinion not persuasive for several reasons, including that it appeared to be based solely on Claimant's subjective complaint, it was very short without explanation, it did not link the alleged swelling symptoms to any established medically determinable impairment, it did not indicate the degree of swelling or the required elevation level, and it was inconsistent with another statement that Claimant "may need to elevate feet throughout the day as needed." (R. 23, 900). PA Brown also stated in a July 11, 2022 letter that Claimant may need to elevate her feet throughout the day as needed, (R. 894), which the ALJ found not persuasive because it was vague and based on Claimant's subjective complaint or request. (R. 23).

Claimant takes issue with the ALJ's findings that the recommendations were apparently based on subjective complaints, citing the presence of edema on examination, impairment of blood flow on a venous study, and bulging varicose veins that elicited a recommendation for compression stockings. However, as the ALJ noted, multiple examinations during the relevant period showed only trivial edema on occasion and that her large bilateral lower extremities were secondary to

8

body habitus. (R. 21, 615, 621, 689, 723, 783, 791, 798, 806, 814); *see* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (an opinion that is inconsistent with other medical evidence is less persuasive). One notation of moderate edema during the relevant period, (R. 899), does not demonstrate that a limitation for leg elevation was justified.

As for Claimant's varicose veins, the ALJ also considered that Claimant failed to follow a related recommendation to wear compression stockings. (R. 21). In fact, at the only visit where Claimant was noted to have moderate edema, PA Brown noted that Claimant "denies compression sock wear" and discussed with Claimant "the importance of compression stocking therapy . . . necessary to be worn as much as possible but preferably while on the feet for long periods of time." (R. 899). Claimant was advised to follow up "after the prescribed conservative management time is over," *id.*, but Claimant did not wear the recommended compression stockings, as she indicated they made her "very uncomfortable," (R. 45). The ALJ determined this was not a reasonable explanation for Claimant's non-compliance with recommended treatment, and the court finds no error in that determination. (R. 25); *see Talbot v. Comm'r of Soc. Sec. Admin.*, No. CV-15-08127-PCT-JJT, 2016 WL 4190739, at *8 (D. Ariz. Aug. 9, 2016) (finding the ALJ appropriately considered the claimant's non-compliance with treatment for not using a prescribed VPAP machine even though the claimant reported she found it uncomfortable); 20 C.F.R. §§ 404.1530, 416.930 (requiring a claimant to follow prescribed treatment in order to obtain benefits); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.").

The court also agrees with the ALJ that Dr. Trifiro's opinion lacks explanation, which provides further support for the ALJ's finding it was not persuasive. *See* 20 C.F.R. §§

9

404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). PA Brown's opinion that Claimant "may" need to elevate her feet likewise lacked explanation and was vague. *See Robertson v. Saul*, No. 5:18-CV-454-D, 2019 WL 7585180, at *11 (E.D.N.C. Dec. 19, 2019) (finding opinions qualified by the word "may" necessarily leaves open the possibility that plaintiff may not have such limitations, and "vagueness is a proper ground for limiting the weight given medical source opinions."), *adopted by*, 2020 WL 241552 (E.D.N.C. Jan. 14, 2020). While Claimant takes issue with the other reasons provided by the ALJ, the court finds that the factors of consistency and supportability provide substantial evidence supporting the ALJ's evaluation of Dr. Trifiro's opinion. *See Biestek v. Berryhill*, 587 U.S. — , 139 S. Ct. 1148, 1154 (2019) (explaining the threshold of "substantial evidence" is not high, but rather is "more than a mere scintilla" or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (citations omitted).

Finally, with respect to the ALJ's discussion of Claimant's daily activities, the court agrees with Claimant that the ALJ cited her routine travel with her husband on his truck driving routes without considering her testimony that she would mostly stay in the bed with her feet propped up, and she had not traveled with him for almost a year at the time of the administrative hearing. (R. 43); *see Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (finding error when the ALJ stated that the claimant could "maintain her personal hygiene, cook, [and] perform light household chores" but did not consider the claimant's testimony that she has trouble dressing and bathing, she can only prepare simple meals, it takes her longer than normal to do laundry and shop, and she

10

sometimes "spends the entire day on the couch"). However, this error does not require remand in light of the substantial evidence discussed above, which supports the ALJ's decision. *See Michelle H. v. O'Malley*, No. 1:23-CV-159, 2024 WL 1256263, at *8 (M.D.N.C. Mar. 25, 2024) ("[T]he ALJ's errant finding of an inconsistency in Plaintiff's statements regarding her driving abilities" was not reversible error where substantial evidence supported the ALJ's decision) (citing *Krystal H. v. Saul*, No. 4:19-CV-5, 2020 WL 5526499, at *6 (W.D. Va. July 20, 2020) (deeming ALJ's error in "consider[ing] the type of daily activities [the plaintiff] could perform without explicitly considering her testimony describing the limited extent to which she could perform them . . . harmless . . . because the ALJ gave other legally adequate reasons to support his [subjective symptom] and RFC assessments, and those reasons [we]re supported by substantial evidence in the record"), *adopted by*, 2020 WL 6047756 (W.D. Va. Oct. 13, 2020)).

The ALJ applied the correct standards and adequately explained his decision, which is supported by substantial evidence, and it is not the court's role to "to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citation omitted). Accordingly, the ALJ did not err in failing to include a limitation for leg elevation in the RFC, and decision of the Commissioner is affirmed.

## VI. CONCLUSION

For the reasons stated above, the decision of the Commissioner is affirmed.

So ordered, the 20th day of May, 2024.

Robert B. Jones, Jr.
United States Magistrate Judge

11